[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11808
Non-Argument Calendar

_____

D. C. Docket No. 05-00301-CR-WHA

UNITED STATES OF AMERICA,

Plaintiff-Appellee-
Cross-Appellant,

versus

MICHAEL DAVID KING,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(December 14, 2007)

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Michael David King appeals his convictions for transportation of child

pornography, in violation of 18 U.S.C. § 2252A(a)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The government cross-appeals challenging the district court's determination that King's conviction for transporting child pornography did not constitute a "prior conviction" for the purpose of imposing a mandatory minimum sentence of ten years imprisonment for the possession conviction, under 18 U.S.C. § 2252A(b)(2).

## I.

In February 2003, while serving as a civilian contractor, King resided in a dormitory at the Prince Sultan Air Base in Saudi Arabia. During his stay in the dormitory, King kept his personal laptop computer in his room and connected it to the base network. King understood that as a user of the base network, his activities on the network were subject to monitoring. King also believed that he had secured his computer so that others could not access the contents of its hard drive.

On February 23, 2003, an enlisted airman was searching the base network for music files when he came across King's computer on the network. The airman was able to access King's hard drive because it was a "shared" drive. In addition to finding music files on King's computer, the airman also discovered a pornographic movie and text files "of a pornographic nature." The airman reported his discovery to a military investigator who in turn referred the matter to a

2

computer specialist. This specialist located King's computer and hard drive on the base network and verified the presence of pornographic videos and explicit text files on the computer. She also discovered a folder on the hard drive labeled "pedophilia." The folder, however, contained no files. The computer specialist did not employ any "special means" to access King's computer because "everybody on the entire network" could obtain the same access.

The computer specialist then filed a report with the investigator detailing what she had found, and the investigator obtained a search warrant for King's room. During a search of his room, military officials seized King's computer and also found CDs containing child pornography. They then referred the matter to the FBI for investigation and King left Saudi Arabia and returned to Montgomery, Alabama.

Two years later, the government obtained an indictment charging King with possession of child pornography.[1] After his arrest, the government searched his residence pursuant to a search warrant and found additional CDs and hard drives containing over 30,000 images of child pornography.

At his arraignment, King entered a plea of not guilty. Shortly thereafter, he

---

[1] A grand jury later returned a superceding indictment which contained two counts of possessing child pornography and one count of transporting child pornography from Montgomery, Alabama to Saudi Arabia.

3

filed a motion to suppress the evidence seized from his dorm room in Saudi Arabia, arguing that the search violated the Fourth Amendment. Later, King filed a motion to suppress the evidence obtained from his residence in Montgomery and a post-arrest statement, arguing that the evidence and statement were fruits of the illegal search of his dorm room. A magistrate judge issued a recommendation and report as to the first motion, recommending its denial. King objected to the report and recommendation, but the district court overruled his objection and denied the first motion to suppress, finding that King had no reasonable expectation of privacy in the contents of his computer and, alternatively, that the search was a proper workplace search. The district court also considered King's second motion to suppress, without the benefit of a magistrate judge's report, and denied that motion as well.

King then entered into a plea agreement with the government pursuant to which he pleaded guilty to one count of transporting child pornography and one count of possessing child pornography. The agreement allowed King to appeal the district court's denial of his motions to suppress. The agreement also reflected the parties' understanding that the government would recommend a sentence within the applicable sentencing guidelines range, subject to the government's right to seek a ten-year mandatory minimum sentence on the possession count on the basis

4

of King's "prior conviction" for the transporting child pornography count.

The district court held a sentence proceeding on April 17, 2007. At that proceeding, the government argued for a ten-year mandatory minimum sentence as it was entitled to do under the plea agreement. The district court rejected the government's argument and sentenced King to 108 months imprisonment on both the transportation and possession charges to be served concurrently. That sentence was within the applicable guideline range. King then appealed his conviction and the government cross-appealed, challenging the sentence imposed by the district court.

## II.

King contends that the district court denied his motions to suppress based on the erroneous finding that he did not have a reasonable expectation of privacy in his computer files that were remotely accessed over a military computer network, because the search of those files by the computer specialist exceeded the scope of her authority to monitor usage of the base network. King asserts that he sought to protect his computer files through security settings, he never knowingly exposed them to the public, and he was unaware that the files were shared on the network. King further challenges the district court's alternative finding that the military officials conducted a proper workplace search, arguing that this was a criminal

5

investigation into King's personal computer located in his private dorm room. Finally, King asserts that the subsequent search warrant was invalid, as it was based on information that was obtained improperly through the remote search of his computer files.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, examining the district court's findings of fact for clear error and the district court's application of law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir.), cert. denied, 127 S. Ct. 2924 (2007).

The Fourth Amendment's prohibition against unreasonable searches and seizures "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion," and "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." United States v. Cooper, 203 F.3d 1279, 1283–84 (11th Cir. 2000). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." United States v. Segura-

6

Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (quotation marks and citations omitted). Accordingly, the threshold issue in this case is whether King had a legitimate expectation of privacy in the contents of his personal laptop computer when it was connected to the base network from his dorm room. See Cooper, 203 F.3d at 1284.

We have held that tenants of a multi-unit apartment building do not have a reasonable expectation of privacy in the common areas of the building, where the lock on the front door is "undependable" and "inoperable." United States v. Miravalles, 280 F.3d 1328, 1333 (11th Cir. 2002). We have also held that even though a company has a subjective expectation of privacy in documents that are shredded and disposed of in a garbage bag that is placed within a private dumpster, the company's "subjective expectation of privacy is not one that society is prepared to accept as objectively reasonable" when the company fails to "take sufficient steps to restrict the public's access to its discarded garbage." United States v. Hall, 47 F.3d 1091, 1097 (11th Cir. 1995).

King has not shown a legitimate expectation of privacy in his computer files. His experience with computer security and the affirmative steps he took to install security settings demonstrate a subjective expectation of privacy in the files, so the question becomes "whether society is prepared to accept [King's] subjective

7

expectation of privacy as objectively reasonable." See id. at 1094.

It is undisputed that King's files were "shared" over the entire base network, and that everyone on the network had access to all of his files and could observe them in exactly the same manner as the computer specialist did. As the district court observed, rather than analyzing the military official's actions as a search of King's personal computer in his private dorm room, it is more accurate to say that the authorities conducted a search of the military network, and King's computer files were a part of that network. King's files were exposed to thousands of individuals with network access, and the military authorities encountered the files without employing any special means or intruding into any area which King could reasonably expect would remain private. The contents of his computer's hard drive were akin to items stored in the unsecured common areas of a multi-unit apartment building or put in a dumpster accessible to the public.

Because his expectation of privacy was unreasonable King suffered no violation of his Fourth Amendment rights when his computer files were searched through the computer's connection to the base network. It follows that his additional claim that the later search warrant was invalid because it incorporated information obtained from the search of his computer files also lacks merit.

8

**III.**

Where an individual "violates" 18 U.S.C. § 2252A(a)(5), the maximum term of imprisonment is ten years, however, "if such person has a prior conviction under this chapter . . . such person shall be . . . imprisoned for not less than 10 years nor more than 20 years." 18 U.S.C. § 2252A(b)(2). The government contends in its cross-appeal that King's conviction for transporting child pornography constitutes a "prior conviction" for the purpose of imposing a mandatory minimum sentence of ten years imprisonment for the possession conviction under 18 U.S.C. § 2252A(b)(2), even though both convictions were entered at the same time.

In support of its contention, the government relies on <u>Deal v. United States</u>, 508 U.S. 129, 113 S. Ct. 1993 (1993). In that case the Supreme Court interpreted the term "conviction," in the context of the 18 U.S.C. § 924(c) enhancement for a "second or subsequent conviction" for use of a firearm in connection with a crime of violence. It said that the term referred "to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgement of conviction," and not "the adjudication of guilt and the sentence." <u>Id.</u> at 132, 113 S. Ct. at 1996.[2] Accordingly, where the defendant was found guilty in a single criminal proceeding

---

[2] The statutory provision in <u>Deal</u> provided, in relevant part, that "[i]n the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years." 18 U.S.C. § 942(c)(1) (1988).

9

of six counts for using a firearm in connection with a crime of violence, his convictions on the second through sixth counts constituted "second or subsequent convictions" for the purpose of enhancing the statutory term of imprisonment.  See id. at 131–37, 113 S. Ct. at 1996–99.  We have similarly held that "[t]he conviction on four counts of burglary constitutes four separate convictions" for purposes of 18 U.S.C. § 1202(a)(1), even though the burglary counts were charged in a single indictment.  United States v. Greene, 810 F.2d 999, 1000 (11th Cir. 1986).

After the Supreme Court decided Deal, we considered a similar question in United States v. Richardson, 166 F.3d 1360 (11th Cir. 1999).  In that case we addressed the meaning of the phrase "previous convictions" in 18 U.S.C. § 924(e)(1).  Id. at 1361.  Section 924(e)(1) provides for an enhanced sentence "[i]n the case of a person who violates [18 U.S.C.§ 922(g)] and has three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1).  The defendant in Richardson was convicted in 1997 for being a felon in possession of a firearm, in violation of § 922(g).  Richardson, 166 F.3d at 1360–61.  He received an enhanced sentence under § 924(e)(1), based in part on a 1996 drug conviction that occurred after his arrest but before his conviction on the § 922(g) violation.  Id. at 1361.  We reversed the enhance sentence, holding that "the only reasonable

10

interpretation" of the key language in § 924(e)(1) is that "a conviction is 'previous' to a § 922(g) offense only if the conviction occurred before the violation of § 922(g), not simply prior to conviction or sentencing for that violation." Id. (citation omitted). As a result, because the defendant's drug conviction occurred after he violated § 922(g), it could not have been used to enhance his sentence for the § 922(g) violation. Id.

Here, we recognize that King's convictions for transporting and possessing child pornography constitute separate convictions. See Deal, 508 U.S. at 132, 113 S. Ct. at 1996; see also Greene, 810 F.2d at 1000. Therefore, whether King's conviction for transporting child pornography may serve as a basis to impose a mandatory minimum sentence for the possession conviction hinges on whether the conviction for transporting child pornography qualifies as a "prior conviction" under § 2252A(b)(2).

We conclude that the district court correctly held that the government may not use King's conviction for transporting child pornography as a "prior conviction" to enhance his punishment for the possession conviction. The provision at issue provides that "[w]hoever violates" § 2252(a)(5) is subject to a mandatory minimum sentence "if such person has a prior conviction under this chapter." 18 U.S.C. § 2252A(b)(2). As in Richardson, we interpret § 2252A(b)(2)

11

to mean that the qualifying prior conviction must occur before the conduct violating § 2252A(a)(5), and not merely before the § 2252A(a)(5) conviction occurs.  See Richardson, 166 F.3d at 1361.  By way of contrast, the provision in Deal simply provided for an enhanced penalty "[i]n the case of a second or subsequent conviction," and it contained no language suggesting that the predicate conviction must occur before the violation for which the government seeks to impose an enhanced penalty.  Deal, 508 U.S. at 130, 113 S. Ct. at 1195.  We therefore conclude that King was not subject to the ten-year mandatory minimum sentence.

In reaching this conclusion, we acknowledge that the government's argument for the extension of Deal is not without force.  If we were considering this case without the benefit of Richardson, we might reach a different result.  But Richardson is closely analogous in light of the similarities in language between §§ 924(e)(1) and 2252A(b)(2).  Cf. United States v. Steele, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong."); United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by

12

the Supreme Court."); see also  Smith v. GTE Corp., 236 F.3d 1292, 1302 (11th

Circ. 2001) (rejecting the argument that "an exception to the prior panel precedent

rule exists where the first panel to address an issue failed to follow and apply

controlling Supreme Court precedent").

**AFFIRMED.**